UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 22-cr-104-3 (RBW) |
| : | |
| TAVARUS THOMPSON, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. Considering all the factors under 18 U.S.C. § 3553(a), the Government respectfully submits that a sentence of 205 months of imprisonment, 60 months of Supervised Release, and restitution, is a punishment that is sufficient, but not greater than necessary, for the conduct in this case.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Defendant is one of several individuals who perpetrated a string of armed robberies of commercial establishments in and around the District of Columbia from January to March 2022. As detailed in the Statement of Offense submitted in connection with the Defendant's guilty plea, *see* ECF No. 188, the establishments that were targeted include restaurants, convenience stores, liquor stores, and the like. In general, two to three assailants entered the target location; at least one brandished an apparent firearm; and one or more took cash or other items. The Defendant, two Co-Defendants (Stephon and Aaron Harrigan), and two others in a related case (Isaiah Chase and Sterling Davis) were ultimately charged with these crimes.

The Harrigans were arrested in connection with this case on March 6, 2022. Afterwards, the Defendant fled to Marion, South Carolina, where he stayed with his child and the child's mother. Meanwhile, on March 16, 2022, the Defendant was charged, by way of complaint, with

Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951, and Unlawful Possession of Ammunition by a Felon, in violation of 18 U.S.C. § 922(g)(1). The Defendant was arrested in South Carolina two days later. During a search of the residence where he was staying, law enforcement found, among other things, a Taurus Model 709 9mm handgun and magazine

On March 28, 2022, the Defendant and the Harrigans were indicted in the instant case. The Defendant was charged with Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951 (Count 1); Interference with Interstate Commerce by Robbery (Count 2); Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 3); Unlawful Possession of Ammunition by a Felon (Count 6); and two counts of Sale or Receipt of Stolen Vehicles, in violation of 18 U.S.C. § 2313(a) (Counts 8 and 9).

On March 29, 2024, the Defendant pleaded guilty to a Superseding Information charging him with Conspiracy to Interfere with Interstate Commerce by Robbery and Brandishing a Firearm During a Crime of Violence.

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available; the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a). In determining the appropriate sentence, the Court

should consider all of the applicable factors set forth in § 3553(a). *See United States v. Gall*, 552 U.S. 38, 48 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
    a) To reflect the serious of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b) To afford adequate deterrence to criminal conduct;
    c) To protect the public from further crimes of the defendant; and
    d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –

    a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        i) Issued by the Sentencing Commission . . . ; and
        ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
    a) Issued by the Sentencing Commission . . . and
    b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

## ARGUMENT

The Government recommends that the Court accept the parties' plea agreement and sentence the Defendant to 205 months (i.e., 17 years and one month), to be followed by a period of 60 months of Supervised Release, given the nature and seriousness of his offense; his history and characteristics; and the need for the sentence imposed to satisfy the statutory requirements set

forth in § 3553(a)(2)(A)-(D).

### A. Nature, Circumstances, and Seriousness of the Offense

As detailed at length in the Superseding Information and Statement of Offense, the Defendant is one of multiple individuals who are responsible for a string of commercial armed robberies and attempted robberies that were perpetrated between January 2022 to March 2022, in Washington, D.C., and Maryland.

The robberies to which the Defendant admits to conspiring to commit are detailed at length in the Statement of Offense. In particular, he acknowledged that he engaged in an astronomical 29 robberies or attempted robberies. In all of them, at least one firearm was brandished—including, many times, by the Defendant himself. The seriousness of this conduct cannot be overstated. Every instance in which the Defendant committed or attempted to commit an armed robbery presented a risk that a firearm would be used and, potentially, kill, whether by the perpetrators or by someone acting in defense of self or others. Even if a trigger is never pulled, brandishing a firearm during a robbery is designed to put the victims in fear for their lives. It is designed to force them to choose between compliance or, quite possibly, death. Even absent physical harm, the trauma that can be caused by this conduct can be everlasting.

Stated simply, over a period of months, the Defendant repeatedly engaged in dangerous conduct designed to enrich himself and his co-conspirators while causing mental and physical harm to other human beings. What makes this conduct all the more egregious, as detailed below, is that it is far from aberrational when reviewing the Defendant's History and Characteristics.

### B. Defendant's History and Characteristics

The Defendant has already accumulated a significant number of encounters with the criminal justice system. As noted in the PSR, the Defendant has numerous adult convictions. He

was convicted of Unlawful Entry of a Motor Vehicle in 2012. *See* PSR ¶ 282. He was convicted of misdemeanor Destruction of Property in 2019. *See id.* ¶ 283. Then, in 2021, he was convicted of Simple Assault and Contempt after he hit a woman while her children were present and then violated a court order requiring him to stay away from the victim. *See id.* ¶ 284. Further, he has a history of faring poorly on supervision, and at the time of the instant offense, he was on supervision for his 2021 conviction.[1]

Moreover, the Defendant has continued to commit crimes even after he was arrested in this case. On September 18, 2023, he was sentenced in case CR23000896-00 to 2 years of imprisonment, with 1.5 years suspended, for Assault on a Law Enforcement/DOC Person. On January 26, 2024, he was sentenced in case CR23001024-00 to 5 years of imprisonment, with 4.5 years suspended, for Assault and Battery on a Law Enforcement Officer. On June 17, 2024, he was sentenced in case CR24000347-01 to 5 years of imprisonment, with 3 years and 3 months suspended, for Unlawful Wounding, and in case CRF24000347-02, another 5 years (all suspended) for Possession of a Deadly Weapon by a prisoner.[2]

The Defendant continues to recidivate, apparently having learned little from his prior periods of incarceration and supervision. Indeed, his criminal conduct has generally worsened. Thus, he should face a high sentence in this case, and the Government's requested sentence will be by far the longest period of incarceration that the Defendant has faced.

C.    **Need to Promote Respect for the Law and Deterrence**

In evaluating the "need for the sentence imposed" under 18 U.S.C. § 3553(a)(2), the Court should consider a sentence that, among other things, "promote[s] respect for the law" and

---

[1] This pair of convictions should receive 4 points, instead of 2, because the offenses were separated by an intervening arrest. *See* U.S.S.G. § 4A1.2(a)(2).
[2] These convictions would raise the Defendant's Criminal History Score by 9 points to Category VI, which raises his Guideline range on Count 1 to 140 to 175 months and his overall range to 224 to 259 months.

5

"afford[s] adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). Here, these considerations point in favor of the Government's requested sentence.

The Defendant participated in an ongoing conspiracy to commit inherently dangerous robberies while utilizing firearms across multiple months. Such behavior is absolutely unacceptable, and the Court's sentence must make this clear to the Defendant and others. A lengthy sentence of 205 months will do just that.

### D.     Other Factors

The Court should also fashion a sentence that "protects the public from further crimes of the defendant" and "provide[s] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The Government's recommended sentence is justified to protect the public from the Defendant, who is a pronounced recidivist. It would also give the Defendant ample time to pursue further educational and vocational training and participate in other programs that will hopefully give him the skills he needs to finally stop reoffending after his release.

### RESTITUTION

The Government further requests that the Court order at least the following restitution:

- $900 to Exxon (CCN 22005081)
- $900 to Ivy City Motel (CCN 22005674)
- Value of phone to R.Z. (CCN 22007233)[3]
- Value of iPad to Century Distributors (CCN 22007233)[4]
- $700 to L Street Market (CCN 22007281)
- $40 to Z.A. (CCN 22007460)
- $699 to Popeyes (CCN 22007475)
- $530 to SK Life (CCNs 220000079 and CCN 220000157)
- $1,486 to Family Dollar (CCN 22010205)
- Value of cellphone to M.F. (CCN 22014970)[5]

---

[3] For co-defendant Stephon Harrigan, the Court ordered restitution in the amount of $400.
[4] For co-defendant Stephon Harrigan, the Court ordered restitution in the amount of $150.
[5] For co-defendant Stephon Harrigan, the Court ordered restitution in the amount of $100.

- $1,500 to DC Supermart/4 Seasons Convenience (CCN 22016023)[6]
- $1,265 to JS Liquors (CCNs 22016063 and 22024724)
- $50 to 7-11 (CCN 220006587)
- $700 to Crisfield's Seafood (CCN 220005918)
- Value of backpack, iPad, and AirPods to employee of Crisfield's Seafood [7] (CCN 220005918)
- $700 to Roaming Rooster (CCN 22021245)
- $300 to Bless 7 to 10 (CCN 22021718)[8]
- $103 to M.T. (CCN 22021718)[9]
- $1,398.07 to Travelers Insurance (CCN 22021737)
- $400 to Classy Corks (CCN 22022788)
- $84.69 to U-Haul (CCN 22023301)
- $982 to Michigan Liquors (CCN 22023360)
- $700 to Asia Kitchen (CCN 22023375)
- $12,872.26 to Selective Insurance (CCN 22024826)[10]
- $350 to Kwik Stop (CCN 22025859)

A proposed restitution order and redacted Attachment A to that order are attached to this memorandum, and an unredacted Attachment A will be filed ex parte and under seal.

## CONCLUSION

The Defendant's criminal conduct was inherently dangerous, it was repeated, and a review of the Defendant's history and characteristics indicates that it was not aberrational. A sentence of 205 months, 60 months of Supervised Release, and restitution, is appropriate in this matter. Such a sentence accomplishes the goals of § 3553(a) by imposing punishment that is sufficient to capture the Defendant's conduct, while not greater than is necessary.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

---

[6] In his plea agreement, the Defendant agreed to pay $2,500. For co-defendant Stephon Harrigan, the Court ordered restitution in the amount of $1,500.
[7] For co-defendant Stephon Harrigan, the Court ordered restitution in the amount of $826.14.
[8] In his plea agreement, the Defendant agreed to pay $400. For co-defendant Stephon Harrigan, the Court ordered restitution in the amount of $300.
[9] In his plea agreement, the Defendant agreed to pay $150 plus the value of wallet and cards. For co-defendant Stephon Harrigan, the Court ordered restitution in the amount of $103.
[10] In his plea agreement, the Defendant agreed to pay $20,000. For co-defendant Stephon Harrigan, the Court ordered restitution in the amount of $12,872.26.

By:     */s/ Solomon S. Eppel*
Solomon S. Eppel
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6661
solomon.eppel@usdoj.gov